IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PATRICK KELLY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-21-2179 |
| BALTIMORE COUNTY DETENTION CENTER, | * | |
| OFC WAHAB, and SGT. STRAWDERMAN, | * | |
| | * | |
| Defendants. | | |

***

# MEMORANDUM OPINION

Plaintiff Patrick Kelly, who is representing himself in this suit, brings this civil action pursuant to 42 U.S.C. § 1983 against Baltimore County Detention Center ("BCDC"), Officer Wahab, and Sgt. Strawderman. Compl., ECF No. 1. Kelly asserts a violation of his constitutional rights based on Defendants' alleged inattention to unsanitary conditions at BCDC. *Id*. He seeks monetary damages for himself and other affected inmates.

On February 4, 2022, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 15. Kelly did not oppose the motion.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion, construed as a Motion for Summary Judgment, will be granted.

## Background

Kelly claims that at 10:00 p.m. on December 19, 2020, his toilet in Unit 3C, Cell 5 began overflowing with brown water and fecal matter. Compl., ECF No. 1 at 2. According to Kelly, Officer Wahab was informed of the overflow and did not respond to the concerns. *Id*. At 12:00 p.m., Officers Swanke and Quinn took the inmates from the neighboring Cell 6, David Haas and

Timothy Byrne, to processing. *Id*. at 3. Kelly claims that after he was "locked in the cell, covered in fecal matter for 3 hours" with his cellmate Brandon Smith, Sgt. Strawderman escorted him and Smith to processing. *Id*. Kelly claims that fecal matter was on their property, clothes, hair, and mouths. *Id*. Despite being told that their cell was clean at 4:45 a.m., Kelly states that they returned to a dirty cell. *Id*. Instead of cleaning the cell for the inmates, Officer Paul procured a mop and bucket so that Kelly and his cellmate could clean it. *Id*.

Kelly claims that because the issue was not fixed, the toilet again overflowed with brown water and fecal matter at 9:00 a.m. *Id*. Despite notifying officers, Kelly says he was locked in the cell until maintenance arrived two hours later. *Id*. Kelly and Smith were moved to Cell 1 at approximately 1:00 p.m. *Id*. Kelly claims that they were not allowed to shower and that the cart carrying their meals was rolled through sewage. *Id*. Officers later cleaned up the sewage with a wet vacuum, but Kelly says they dumped the vacuum's contents into the showers, where it remained for several weeks. *Id*. at 3-4.

In their response, Defendants assert that it was not Kelly's toilet that overflowed but the one in the neighboring cell, Cell 6. ECF No. 15-1 at 3. Officer Wahab responded to the "commotion" from Cell 6 around 11:20 p.m. although his shift was ending, and he did not observe a malfunctioning toilet, flooding, or fecal matter in Kelly's cell. Affidavit of Wahab, ECF No. 15-3 at 2. Officer Wahab informed one of the inmates in Cell 6 that he had to leave to respond to an emergency situation regarding an inmate altercation. *Id*.

When Sgt. Strawderman conducted an inmate count early on December 20, 2020, he took the occupants of Cell 6 to the processing area to clean up. *See* BCDC Intra-Department Correspondence, ECF No. 15-5 at 10. While the Cell 6 inmates were unable to shower due to a

lack of staff on duty, Sgt. Strawderman "retrieved 2 wash cloths and 2 bars of soap, so [they] could at least clean their feet while they waited for their cell to be cleaned." *Id*.

Kelly later complained about sewage water in his cell, at which time Sgt. Strawderman observed a small amount of water by the door of Kelly's cell. *Id*. As a result, Kelly and his cellmate were also escorted to the processing area to clean their feet with soap and washcloths, and were given new shoes. Affidavit of Strawderman, ECF No. 15-4 at 3; Intra-Department Correspondence, ECF No. 15-5 at 8. Sgt. Strawderman ordered a cleaning detail to remove water in Cells 5 and 6, after which he observed no standing water. ECF No. 15-4 at 3. According to BCDC staff, the wet vacuum used to clean the cells and day room was emptied into the pipe chase drains. ECF No. 15-5 at 8. Sgt. Strawderman also ordered a maintenance team to ensure that Kelly's toilet was functioning, and he ordered new linens for Kelly and Smith. ECF No. 15-4 at 3; ECF No. 15-5 at 10. After Kelly stated that the cell was not sufficiently clean when he returned, he was given gloves and cleaning equipment. ECF No. 15-5 at 12. Kelly asked to be able to shower, and Sgt. Strawderman instructed Officer Paul to let Kelly and Smith shower when there was sufficient staff. *Id.* at 11. Correctional officers confirmed that Kelly could have showered when he was in the day room between 11:40 a.m. and 2:50 p.m. *Id.* at 3.

## Standard of Review

Complaints raised by *pro se* litigants are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must raise factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment motions are granted when the moving party shows that there is no genuine issue of material fact, therefore entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The district court must view facts in the light most favorable to the nonmoving party, including drawing all "justifiable inferences" in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Material" facts "might affect the outcome of the suit under the governing law," and they constitute genuine issues if there is sufficient evidence for the trier of fact to rule in favor of the nonmoving party. *Id.* at 248.

## Analysis

### I. BCDC

As a preliminary matter, BCDC is not a "person" subject to suit under 42 U.S.C. § 1983. Section 1983 states: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." (emphasis added).

A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cnty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit").

Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. Clearly, BCDC is not a person within the meaning of the statute. Therefore, Kelly's claims against it cannot succeed. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002).

**II.     Conditions Claim**

At the time of the incident giving rise to this case, Kelly was a pretrial detainee in Baltimore County, Maryland. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F. Supp. 3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

5

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To the extent Kelly complains about the presence of sewage water and fecal matter in his cell, he raises conditions claims.

"[T]o establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, Kelly claims that BCDC staff were deliberately indifferent in not immediately remedying to his satisfaction the overflowing toilet in his cell or sanitizing the area and not allowing him to shower. He claims that because of these conditions, he was "traumatized," and

has contracted "many illnesses and breathing trouble that [he] did not previously experience." ECF No. 1 at 4.

Even assuming (without deciding) that Kelly has satisfied the objective prong that he was deprived of a basic human need and the deprivation was sufficiently serious, he has not shown that the Defendants acted with a sufficiently culpable state of mind in imposing such conditions as punishment. From the declarations under oath and exhibits filed by the Defendants, it is evident that Officer Wahab and Sgt. Strawderman did not cause Kelly's cell to be flooded. Rather, they attempted to remedy the situation as quickly as possible. Although Officer Wahab was unable to address the issue because he needed to respond to an emergency situation, Sgt. Strawderman addressed the matter by directing staff to clean Kelly's cell, ordering new linens and shoes, and ensuring that Kelly's toilet was functioning. ECF No. 15-5. Sgt. Strawderman did so although multiple correctional officers stated that Kelly's toilet was not the overflowing toilet and, consequently, there was only a small amount of water in Kelly's cell. Furthermore, contrary to Kelly's assertion, the record reflects that the water in his cell was cleaned, the cell was sprayed with disinfectant, and water from the wet vacuum was emptied into the pipe chase drains, not the shower. *Id*. at 8. Moreover, Sgt. Strawderman provided Kelly with an opportunity to shower between 11:40 a.m. and 2:50 p.m. when he was in the dayroom, but Kelly failed to do so. *Id*. at 3, 11. These facts, which Kelly has not controverted, demonstrate that correctional officials at BCDC did not act with a sufficiently culpable state of mind to make out a constitutional violation.

Kelly also cannot withstand summary judgment because he has failed to produce evidence that the challenged conditions caused a serious or significant physical or emotional injury. Although Kelly claims that he suffered physically and mentally, he has provided no exhibits to support his assertions. Even assuming that he was exposed to toilet water over the period of a day,

such act would only amount to negligence; it would not rise to the level of a constitutional violation. *See Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106); *see also Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences.").

For the foregoing reasons, Defendants are entitled to summary judgment on Kelly's conditions claims.

### III.     Kelly's Request to Represent Others

Kelly also asks for compensation on behalf of other inmates affected by the malfunctioning toilet. The standing requirement, derived from the understanding of a case or controversy, "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). It requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*.

Here, Kelly asks that "all inmates named are compensated in the amount of ten million dollars for pain and suffering." ECF No. 1 at 5. As he is the only plaintiff named in this case, he has no standing to seek relief on behalf of individuals not named who may have suffered harm as the result of a constitutional violation.

**Conclusion**

Defendants' Motion, construed as a Motion for Summary Judgment, is granted. A separate Order follows.

July 8, 2022                                      /S/
Date                                                       Paul W. Grimm
                                                            United States District Judge